IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SANDRA G. W., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 20-CV-586-JFJ |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Sandra G. W. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for disability benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), and 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court **AFFIRMS** the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.    General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an

"acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**II.     Procedural History and the ALJ's Decision**

Plaintiff, then a 37-year-old female, protectively applied for Title XVI supplemental security income benefits on April 29, 2018, alleging a disability onset date of November 8, 2007. R. 15, 200-205. Plaintiff claimed she was unable to work due to conditions including social anxiety; depression; borderline personality disorder; bipolar; PTSD; ADHD; back pain; four compressed, collapsing, and deteriorating vertebrae; numbness in left leg; and short-term memory loss. R. 217. Plaintiff's claim for benefits was denied initially on November 26, 2018, and on reconsideration on March 6, 2019. R. 85-122. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted a hearing on January 23, 2020. R. 42-72. The ALJ issued a decision on March 16, 2020, denying benefits and finding Plaintiff not disabled because she was able to

perform other work existing in the national economy. R. 15-35. The Appeals Council denied review, and Plaintiff appealed. R. 1-3; ECF No. 2.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of April 29, 2018. R. 17. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; bipolar I disorder; borderline personality disorder; attention deficit hyperactivity disorder; and posttraumatic stress disorder. *Id.* The ALJ found Plaintiff's impairment of the gastrointestinal system to be non-severe. R. 18. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 19. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had moderate limitations in all four functional areas of understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; adapting or managing oneself; and interacting with others. R. 21-23.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations:

> The claimant is unable to perform work requiring climbing of ladders, ropes or scaffolds; balancing on uneven, moving, or narrow surfaces; crouching; or crawling. The claimant is able to perform work requiring occasional climbing of ramps and stairs; stooping; and kneeling. The claimant is unable to perform work involving any exposure to unprotected heights or dangerous moving machinery. The claimant is able to understand, remember, and carry out simple tasks with simple instructions in a routine work setting (SVP one to two). The claimant is able to perform work requiring occasional interaction with coworkers and supervisors. The claimant is unable to perform work requiring interaction with the general public, but contact is okay. The claimant is able to manage occasional changes in work processes. No tandem or teamwork. The claimant will be off-task no more than ten-percent of the workday.

4

R. 23. At step four, the ALJ found that Plaintiff had no past relevant work. R. 33. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other sedentary unskilled work, such as Document Preparer, Semi-Conductor Bonder, and Polisher. R. 33-34. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 34. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

### III.     Issue

Plaintiff raises one allegation of error on appeal: that the ALJ's mental RFC was unsupported by substantial evidence, because the ALJ failed to incorporate certain stress-related mental limitations into the RFC. ECF No. 18 at 7.

### IV.     Analysis – ALJ's Mental RFC Was Supported by Substantial Evidence

Plaintiff argues the ALJ committed reversible error by failing to incorporate certain stress-related mental limitations into the RFC. In support, Plaintiff relies on (1) a November 2018 psychological consultative exam with Dr. Cooper, (2) Plaintiff's mental health treatment records, and (3) Plaintiff's own report of mental limitations. *See* R. 605-610 (Dr. Cooper's consultative exam), R. 308-309, 310, 312, 493, 520, 532, 535, 536, 538-539, 540, 543, 548, 556, 568, 586, 596, 745, 757, 765, 775, 780, 784, 788, 800, 804, 806 (mental health treatment records), R. 52, 62, 232, 233, 523, 532, 606, 762, 772, 777 (Plaintiff's subjective reports of mental health symptoms). She further argues the ALJ should not have relied on opinion evidence from the state agency psychological reviewers. Although Plaintiff's brief discusses all four categories of evidence together under a single allegation of error, the Court addresses each category separately.

### A. Dr. Cooper's Opinion

First, Plaintiff contends the ALJ insufficiently accounted for Dr. Cooper's November 2018 opinion that Plaintiff "appear[ed] to have a very limited ability to tolerate normal stress," despite finding Dr. Cooper's opinion persuasive. R. 31-32, 608. The ALJ summarized Dr. Cooper's consultative exam and noted Dr. Cooper's opinion, including his opinion that Plaintiff appeared to have a limited ability to tolerate normal stress. R. 31-32. Dr. Cooper also opined, among other findings, that Plaintiff would be able to understand simple questions and follow simple directions, but more complex directions would be difficult to process. R. 608. The ALJ found Dr. Cooper's findings and opinions to be persuasive, because they were "based on Dr. Cooper's examination and expertise." R. 32. The ALJ further concluded Dr. Cooper's findings supported that Plaintiff "would have limitations, and these limitations have been addressed in the above [RFC] finding." R. 32.

Plaintiff contends the ALJ was required to explain why she did not include Dr. Cooper's opinion regarding Plaintiff's ability to handle stress in the RFC. She argues the ALJ defied the governing authority, which requires the ALJ to explain why the RFC conflicted with an opinion from a medical source. *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (explaining that, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted"); *Brooker v. Saul*, No. CIV-20-398-P, 2021 WL 1392860, at *5 (W.D. Okla. Apr. 13, 2021) (explaining that ALJ is required "to explain why he did not adopt a medical opinion which conflicts with the RFC assessed" and "may not pick and choose among or within the medical opinions in a case record, using the portions favorable to his decision while ignoring other unfavorable portions").

Plaintiff's argument is unpersuasive. The ALJ is not required to "parrot" the precise descriptions of a claimant's limitations as stated in a medical opinion. Further, the ability to

6

tolerate normal stress does not translate directly to a work-related limitation. The ALJ adequately accounted for Plaintiff's limited ability to handle stress in the RFC. Specifically, the ALJ limited Plaintiff to understanding, remembering, and carrying out simple tasks with simple instructions in a routine work setting (SVP one to two), occasional changes in work processes, being off-task up to ten percent of the workday, and limited social interaction. R. 23. In addition, the RFC limitations of simple tasks and instructions correspond to "unskilled" work, which does not require concentration or attention for more than two hours at a time. R. 23, 34. *See* SSA Program Operations Manual System ("POMS") DI § 25020.010(B)(3) (unskilled work requires claimant to "maintain attention for extended periods of 2-hour segments (concentration is not critical)"). The Court identifies no error in the ALJ's incorporation of Dr. Cooper's opinion into the RFC.

Plaintiff additionally argues that the ALJ failed to comply with SSR 85-15p, which states that the "reaction to the demands of work (stress) is highly individualized," and "the mentally impaired may have difficulty meeting the requirements of even so-called 'low-stress' jobs." SSR 85-15p, 1985 WL 56857, at *6 (Jan. 1, 1985). SSR 85-15p further explains that, "[b]ecause response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job." *Id.* As a result of such individualized responses to work demands, SSR 85-15p requires that "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment." *Id.* However, the ALJ's findings with respect to Plaintiff's stress were reflected in in the RFC assessment, in compliance with SSR 85-15p. The ALJ incorporated Dr. Cooper's opinion as stated above, and those limitations were supported by the medical record and Dr. Cooper's opinion.

Finally, Plaintiff relies on an unpublished case from this Court in support of reversal. *See Pamela Sue W. v. Saul*, No. 19-CV-181-JFJ, 2021 WL 1224907, at *5 (N.D. Okla. March 31, 2021). In *Pamela Sue W.*, this Court found the ALJ erred when he appeared to accept the findings of two consultative examiners, but the ALJ had misread or ignored the examiners' findings in concluding that the claimant had no manipulative or postural limitations. *Id. Pamela Sue W.*, however, is distinguishable. In that case, the ALJ affirmatively misread or ignored the examiner's findings to support the RFC. Here, by contrast, the ALJ accurately noted Dr. Cooper's finding regarding ability to handle stress. Unlike handling ability or postural limitations, a limited ability to handle stress does not readily translate into a work-related limitation. In this case, it is not apparent that the ALJ misread or ignored Dr. Cooper's opinion regarding ability to handle stress. Accordingly, *Pamela Sue W.* is not persuasive authority on this issue.

**B.     Medical Evidence**

Second, Plaintiff argues the ALJ's mental RFC was unsupported by the objective medical record. In support, Plaintiff cites various clinical visit for mental health therapy and medication management, as well as her hospital admission in September 2018 for an apparent suicide attempt. *See* R. 308-309, 310, 312, 493, 520, 532, 535, 536, 538-539, 540, 543, 548, 556, 568, 586, 596, 609, 745, 757, 765, 775, 780, 784, 788, 800, 804, 806. These records show that Plaintiff consistently received treatment for mental health issues beginning in June 2017, with her medication being adjusted at times. At therapy visits, Plaintiff regularly reported mood swings, anxiety, past trauma, and depression. At various mental health visits, Plaintiff presented as anxious, angry, depressed, agitated, tearful, or restless, with mental status observations including sad, labile, or blunted affect; impulsivity present; indifferent attitude; ambivalent insight; fair attention and concentration; fair hygiene; and fair judgment. *See, e.g.*, R. 534, 538, 543, 550.

Plaintiff argues these records demonstrate that the RFC insufficiently accounted for her ability to handle stress.

Plaintiff's argument is unpersuasive. The ALJ thoroughly reviewed Plaintiff's mental health history, including her September 2018 suicide attempt. The ALJ accounted for Plaintiff's mental health impairments resulting from her severe bipolar I disorder, borderline personality disorder, ADHD, and PTSD. As explained above in Part IV.A, the ALJ's mental RFC was restricted and adequately accounted for Plaintiff's limited ability to handle stress.

Plaintiff relies on less favorable observations in her mental health records, but the record also shows that Plaintiff presented at many mental health visits with improved symptoms. Notably, although Plaintiff was hospitalized in September 2018 for a suicide attempt and presented as anxious and agitated after being revived (R. 493-509), subsequent psychiatric and therapy evaluations showed no further suicidal ideation despite symptoms of depression and anxiety. *See, e.g.*, R. 532, 536, 540, 545, 568, 579, 583, 596, 762, 786, 796. At various clinical visits in 2017 and 2018, she was observed as cooperative, with normal judgment, and appropriate or congruent mood/affect. *See, e.g.*, R. 310-311, 315, 318, 321, 325, 329, 388, 402, 419, 435, 444, 447, 450. At many therapy sessions in 2019, Plaintiff's therapist regularly observed a sad or anxious mood, but otherwise generally normal mental status. *See, e.g.*, R. 782, 784, 786, 788, 796, 800, 802, 804, 806, 808, 810. At many other therapy visits between October 2018 and November 2019, Plaintiff's therapist reported completely normal mental status observations, including euthymic mood, appropriate affect, good attention span, and linear thought processes. R. 550, 556, 574, 583, 588, 590, 598, 790, 792, 794, 798. As of December 2019, Plaintiff's therapist observed a sad mood but otherwise normal mental status, with Plaintiff reporting excessive mood swings and anger issues. R. 782.

The Court finds the ALJ adequately explained her reasons for not imposing additional stress-related mental restrictions into the RFC based on the objective medical record. Plaintiff points to no part of the objective record to suggest that she was more limited in her mental capabilities than the ALJ indicated in the RFC. Plaintiff simply asks the Court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

### C. Plaintiff's Subjective Statements

Plaintiff further argues her subjective reports of mental health symptoms demonstrate that the ALJ should have added further stress-related limitations into the RFC. Plaintiff cites to various subjective reports of mental health problems, including reports that she did "not handle stress at all." R. 233 (August 2018 function report). *See* R. 52 (Plaintiff testified she was "terrified of people"), R. 62 (Plaintiff testified she was unable to focus on a television program for an hour), R. 232 (Plaintiff stated in August 2018 function report that she had a "hard time being around people" and had a "hard time paying attention" to spoken instructions), R. 493, 523, 532, 606, 762, 772, 777. Plaintiff argues that the ALJ's stated reasons for discounting Plaintiff's allegations of disabling symptoms were conclusory and unsupported in the record.

Plaintiff's argument is unavailing. In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. SSR 16-3p, 2016 WL 1119029, at *7 (Mar. 28, 2016). If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in

fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3).[1]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence she relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id*.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent" with the medical and other evidence in the record. R. 24. As support, the ALJ stated that examination findings at a December 2018 mental health visit did not support the alleged severity of Plaintiff's complaints or the presence of any functional limitations that would contradict the RFC. R. 28 (citing R. 532-535). At that visit, Plaintiff complained of depression and mood swings. R. 532. Her physician observed she was well-groomed, alert, and fully oriented. *Id.* Her appearance was adequate and

---

[1] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

11

hygiene was fair. R. 534. Fund of knowledge was average, there was no indication of impulsivity, and her attitude was cooperative. *Id.* Her mood was sad, affect was appropriate, insight was ambivalent, judgment was good, thought process was normal, and thought content was within normal limit. *Id.* Memory was good, and attention span and concentration were fair. *Id.*

The ALJ also found that, while Plaintiff "described significant mental health issues and she was given several diagnoses," mental health examination findings at a November 2019 mental health visit did not support Plaintiff's subjective complaints or support additional functional limitations that would contradict the RFC. R. 29-30 (citing R. 762-766). At that visit, Plaintiff complained of anxiety, insomnia, and mood swings but denied sense of danger, self-harm, depression, memory loss, confusion, or hallucinations. R. 762. Her physician observed she was well-groomed, alert, and fully oriented. R. 765. Her appearance was adequate and hygiene was fair. *Id.* Fund of knowledge was average, there was no indication of impulsivity, and her attitude was cooperative. *Id.* Her mood was euthymic, affect was appropriate, insight was ambivalent, judgment was good, orientation was full, thought process was normal, and thought content was within normal limit. *Id.* Memory, attention span, and concentration were good. *Id.* Her physician assessed attention-deficit disorder, bipolar I disorder, and post-traumatic stress disorder. *Id.*

The Court finds that the ALJ's consistency analysis was proper and in accordance with SSR 16-3p. The ALJ appropriately explained that Plaintiff's mental health visits in December 2018 and November 2019 revealed generally normal mental status observations that were inconsistent with her complaints of disabling mental health limitations. While Plaintiff points to her own statements supporting difficulty handling stress, as well as various mental health visits at which Plaintiff's care providers observed less favorable mental status findings (*see, e.g.*, R. 308, 312, 493, 538, 540, 543, 548, 568, 780, 788, 800, 804, 806), Plaintiff fails to show that the ALJ's

12

consistency explanation was incorrect, unsupported, or conclusory. Plaintiff also points out that she received consistent mental health treatment, including therapy and medications. However, the ALJ documented Plaintiff's ongoing mental health treatment and still found her capable of performing work within the RFC. R. 26-30. Again, Plaintiff only asks the Court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172; *Lax*, 489 F.3d at 1084.

### D.   Other Opinion Evidence

Finally, Plaintiff argues the ALJ improperly relied on the state agency psychological reviewers' opinions as substantial evidence, because the reviewers' opinions were outdated. In November 2018, initial reviewer Ryan Jones, Ph.D., opined that Plaintiff could perform simple tasks with routine supervision; could relate to supervisors and peers on a superficial work basis; could not relate to the general public; and could adapt to a work situation and some forewarned changes in a usually stable setting. R. 100. In February 2019, reconsideration reviewer Cynthia Kampschaefer, Psy.D., agreed with Dr. Jones' opinion. R. 120. The ALJ found their opinions to be persuasive and well supported, and she found the "new records support these opinions as well." R. 31. Plaintiff argues the agency opinions were outdated, because they failed to account for the fact that Plaintiff continued to seek mental health treatment and required medication adjustments throughout 2019. She also argues the agency reviewers' opinions are stale, because the reviewers did not have access to a May 2019 mental medical source statement ("MSS") from Grand Lake Mental Health Center. *See* R. 639-640.

Plaintiff's arguments are unpersuasive. Plaintiff's symptoms have not demonstrated a significant change or worsening in her condition since February 2019, and the ALJ specifically found that more recent records supported the agency reviewers' opinions. Plaintiff points to no specific mental health records demonstrating a significant change or worsening of her mental condition after the agency reviewers gave their assessments.

13

As for the May 2019 mental MSS, which did include significant mental limitations, the ALJ considered the opinion and found it to be not persuasive. R. 33, 639-640. The ALJ explained that the "level of limitation is not supported by the mental status examinations." *Id.* Plaintiff does not challenge the ALJ's rejection of the May 2019 MSS opinion. Accordingly, the agency reviewers' opinions cannot be considered "outdated" based on the May 2019 MSS opinion. The Court identifies no error based on the alleged "staleness" of the agency reviewers' opinions.

V.    **Conclusion**

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 31st day of March, 2022.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**